### AMERICAN CENTRAL INS. CO. v. TERRY et al. (No. 3632.)

Court of Civil Appeals of Texas. Texarkana. Feb. 20, 1929.

Rehearing Denied March 7, 1929.

E. G. Senter, of Dallas, and Edgar Wright, of Paris, for plaintiff in error.

W. F. Moore and Long & Wortham, all of Paris, and Robbins & Bailey, of Clarksville, for defendants in error.

HODGES, J. This suit was filed by the defendant in error Terry against the plaintiff in error for recovery of $4,500 and accrued interest on a fire insurance policy. The property insured was the residence of the defendant in error, situated in Clarksville, Tex., which was burned in December, 1925. The defendant in error claimed that there was a total loss, and asked judgment for the full amount of the policy. The Paris Building & Loan Association intervened in the suit, claiming to be a creditor of the insured to the amount of $2,717.05 secured by a lien on the proceeds of the policy. In addition to filing exceptions and a general denial, the plaintiff in error sought to abate the action upon the ground that an agreement for an arbitration had been entered into between it and the defendant in error Terry, and no award had been made by the arbitrators selected. It pleaded the following provisions of the policy:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and failing to agree shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

The policy further stipulated that the loss should not become payable until 60 days after the ascertainment, estimate, and satisfactory proof of the loss therein required had been received by the company, including an award by the appraisers appraising, if any had been required. The court overruled the plea in abatement, and submitted the following issue, which was answered in the affirmative:

"Was the building in issue in this case after the fire a total loss? Answer yes or no. In this connection you are instructed that there can be no total loss so long as the remnant of the structure standing is reasonably adapted for use as a basis on which to restore the building to the condition in which it was before the injury. Whether it is adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis."

Other interrogatories were propounded, the answers to which were rendered unnecessary by the affirmative answer to the first interrogatory. Upon the answer given the court rendered a judgment against the plaintiff in error for the full amount of the policy.

This is the second appeal in this case. The first is reported in 298 S. W. 658, to which reference is made for a fuller statement of the pleadings.

There are, we think, but two questions presented which call for special consideration and discussion. One is, did the court err in

overruling the plaintiff in error's plea in ·abatement? The other is, does the evidence support the verdict of the jury finding that there was a total loss?

It appears that, before any suit was filed, the defendant in error Terry entered into a written agreement with the plaintiff in error to arbitrate their differences as to the extent of the loss. Terry claimed that the loss was total, while the representative of the plaintiff in error contended that it was only partial. After reciting the provisions of the policy relating to arbitration in case of disagreement as to the amount of the loss, the arbitration agreement contained the following stipulation:

"Witnesseth: That J. F. Kunkel and A. L. Hartshorne shall appraise and ascertain the sound value of the loss upon the property damaged and destroyed by the fire of December 13, 1925, as specified below. Provided, that the said appraisers shall first select a competent and disinterested umpire, who shall act with them in matters of difference only. The award of any two of them made in writing in accordance with this submission shall be binding upon both parties as to the amount of such loss. It is expressly understood that this appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage only to the property hereinafter described, and shall not determine, waive, or invalidate any other right or rights of either party."

The two arbitrators selected failed to agree upon the amount of the loss, and also failed to agree upon an umpire. After that failure, this suit was filed; ·the plaintiff's petition alleging that the property insured was totally destroyed. In the first trial the jury found that the building was only partially destroyed, but that judgment as reversed on appeal and the case remanded. It was in the second trial that the jury returned a verdict finding, in effect, that the building was totally destroyed.

 It is well settled that, when the loss is total, the policy becomes a liquidated demand, and the stipulations calling for an arbitration have no application. Nat. Fire Ins. Co. v. House (Tex. Civ. App.) 197 S. W. 476; Queen Ins. Co. v. Jefferson Ice Co., 64 Tex. 578. It seems that the plea in abatement here presented is based upon the proposition that the agreement to arbitrate entered into after the loss estops the insured from prosecuting a suit for any amount until the arbitrators have made an award. In other words, it is contended that the defendants in error are bound by that agreement to refer the matter in dispute to the arbitrators, and can prosecute no suit upon the policy until the arbitrators have made an award or have failed to make an award for some reason for which the plaintiff in the suit is not respon-

sible. The obligation to arbitrate is derived from the terms of the policy, and, under the statute, must be limited to losses which are only partial. The arbitration agreement which was entered into after the fire did not convert the total loss into a partial loss, or commit the owner of the property and the intervenor to an admission that there was only a partial loss. If the loss was total, the agreement was without consideration, and for that reason unenforceable, and constituted no barrier to a suit for a total loss.

 The next question is, Does the evidence support the verdict of the jury? Most of the witnesses who testified upon that issue were contractors and builders of experience, and their testimony was conflicting. Those who were called by the defendants in error testified, in effect, that there was a total loss; that the portions of the building which were not consumed by the fire were rendered unfit for use in reconstruction; that it would be necessary to tear down the walls and other portions still standing in order to reconstruct the building in as good a condition as it was prior to the fire. Witnesses offered by the plaintiff in error testified to the contrary, It would serve no useful purpose to quote the testimony at any length. We are of the opinion that there was sufficient legal evidence to support the finding of the jury.

The record contains a number of assignments complaining of the admission of testimony. These have been examined, and are overruled without discussion.

The judgment is affirmed.